UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NURIDEEN ISLAM,

                         Plaintiff,

-against-

GLENN S. GOORD, Commissioner of New York State Department of Correctional Services, WILLIAM MAZZUCA, Superintendent of Fishkill Correctional Facility, W. SCHALLER, Captain at Fishkill Correctional Facility, D. MICHAELS, Lieutenant at Fishkill Correctional Facility, M. BLAINE, Sergeant at Fishkill Correctional Facility, GUARINO, Sergeant at Fishkill Correctional Facility, and RIEL, Corrections Officer at Fishkill Correctional Facility,

                         Defendants.

05 Civ. 7502 (RJH)

**MEMORANDUM OPINION AND ORDER**

---

      Plaintiff Nurideen Islam, currently incarcerated in Fishkill Correctional Facility ("Fishkill"), brings a *pro se* complaint under 42 U.S.C. § 1983, seeking monetary damages and injunctive relief. He brings this complaint against defendants Glenn S. Goord, the Commissioner of the New York State Department of Correctional Services ("DOCS"), William Mazzuca, Superintendent of Fishkill, Captain W. Schaller, Lieutenant D. Michaels, Sergeant M. Blaine, Sergeant Guarino, and Corrections Officer Riel, alleging violations of his constitutional rights. According to a liberal reading of plaintiff's *pro se* pleadings, plaintiff alleges (1) cruel and unusual punishment in violation of the Eighth Amendment, (2) retaliation in violation of the First Amendment, (3) tampering with his family and legal mail in violation of the First and Fourteenth

1

Amendments, and (4) inadequate investigation of complaints in violation of his Fourteenth Amendment due process rights.[1]  Now before the Court is defendants' motion [12] to dismiss the complaint in its entirety.  For the reasons set forth below, defendants' motion is GRANTED.

## BACKGROUND

Plaintiff is, and has been at all relevant times, incarcerated at Fishkill Correctional Facility ("Fishkill").  In his complaint, filed August 24, 2005, plaintiff has set forth factual allegations that the Court shall accept as true for the purposes of this 12(b)(6) motion.[2]

On November 18, 2004, defendant Corrections Officer Riel allegedly affixed a magazine advertisement for a video game with the words "Kill Zone" and "Kneel Before Us" behind a desk in plaintiff's housing unit.  (Compl. ¶¶ 12, 31.)  According to plaintiff, the display caused him and other inmates to become "terrorized and visibly upset." (Compl. ¶ 12.)  On November 21, 2004, plaintiff filed an employee misconduct report (the "November 21 Misconduct Report")

---

[1] Plaintiff, in his opposition papers, has expressly stated that he does not bring a claim for inadequate investigation of his grievances in violation of his Fourteenth Amendment rights.  Therefore the Court will not address this claim.

[2] In an affidavit submitted in opposition to defendants' motion, plaintiff has offered allegations pertaining to post-complaint events.  Specifically, plaintiff alleges that on November 3, 2005, Riel allegedly assaulted plaintiff by colliding into him on a walkway and injuring his shoulder.  (Pl.'s Aff. ¶ 20.)  Plaintiff also alleges an additional instance of tampering with legal mail.  (*Id.* ¶ 25.)  He alleged that legal mail received from the New York Correctional Association was opened outside of his presence and given to him thirteen days later.  (*Id.*)  Since it "is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss," *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989), the Court will not consider allegations not made in the complaint.  *See also, e.g.*, *Brown v. Wright*, 04 Civ. 0462 (RWS), 2005 WL 3305015, at *7 (S.D.N.Y. 2005) ("To the extent that [prisoner-plaintiff's] opposition seeks to amend the complaint by adding new and mostly unexhausted categories of claims, it is inappropriate."); *Connolly v. Havens*, 763 F. Supp. 6, 8 n.2 (S.D.N.Y. 1991) ("The Court will not consider the numerous factual allegations set forth for the first time in plaintiff's memorandum opposing the instant motions. It is a basic principle that a complaint may not be amended by the plaintiff's brief filed in opposition to a motion to dismiss."); *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 987 (S.D.N.Y. 1989) ("A claim for relief may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).  This is, of course, without prejudice to plaintiff to fully exhaust these grievances and pursue relief in the federal courts in a separate action, if he believes he has a colorable claim under § 1983.

against Riel for displaying the advertisement and allegedly repeatedly threatening and harassing him in the past.  (*Id.*)

Defendant Corrections Sergeant Blaine was assigned to investigate the matter on November 22, 2004.  (Compl. ¶ 13.)  Plaintiff alleges that Blaine retaliated against him for filing the November 21 Misconduct Report by threatening to place him in involuntary protective custody and improperly conducting the investigation by not summoning most of his witnesses, treating the two witnesses summoned in an unprofessional manner, and distorting and omitting material facts.  (*Id.* ¶ 14.)  Soon after, on or about November 23, 2005, plaintiff filed a grievance against Blaine for retaliation (the "November 23 Grievance").[3]  (*Id.*)  Plaintiff appealed the denial of his November 23 Grievance to the Central Office's Review Committee, which denied his claim in January 2005.  (*Id.* ¶ 20.)

On December 2, 2004, plaintiff complained to the mail room with respect to missing family mail.  (*Id.* ¶ 17.)  Plaintiff believes that Riel was responsible for the incident because Riel has been "observed on several occasions tampering with inmates['] mail."  (*Id.*)

On December 9, 2004, plaintiff received a letter from defendant Superintendent Mazzuca, evidently in response to his November 23 Grievance against Blaine.[4]  (*Id.* ¶ 18.)  It informed plaintiff that defendant Lieutenant Michaels had been assigned to replace Blaine as investigator of plaintiff's complaints about Riel.  (*Id.*)  Plaintiff informed Michaels that Riel "possessed . . .

---

[3] In addition to filing this grievance, plaintiff also filed a report with the Inspector General's office regarding Blaine's alleged "obstruction of an investigation" and sent a letter to the Bureau of Criminal Investigation regarding Riel and Blaine's misconduct.  (Compl. ¶¶ 15–16.)  The Inspector General's Office responded by memorandum on December 28, 2004.  (Compl. ¶ 19.)  The memorandum advised plaintiff to file his complaint with defendant Superintendent Mazzuca (*id.*), which plaintiff had already done by way of filing the November 23 Grievance (*id.* ¶¶ 14, 18). Plaintiff alleges that the Inspector General's Office's response to his complaint was inadequate because it ignored "the unparalleled level of nepotism [at Fishkill]" plaintiff had complained of.  (*Id.* ¶ 19.)

[4] In his complaint, plaintiff states that he "received a response from the Superintendent," but does not specifically identify the superintendent as Mazzuca.  However, the Court presumes plaintiff intends to refer to Mazzuca.

3

animosity toward his fellow officer Ms. C. Bean" and defamed Bean's character. (*Id.*) However, plaintiff also found Michaels' investigation unsatisfactory, and alleges that he distorted and omitted facts. (*Id.*)

In January 2005, plaintiff alleges that Riel, defendant Sergeant Guarino, and an unidentified sergeant conspired to frame Officer Bean, inmate Anthony Ellison, and him in retaliation for filing complaints complaining about conditions in the housing unit. (Compl. ¶ 21.) Plaintiff states that Riel, Guarino, and the unidentified person conspired to frame Bean and Ellison by recruiting inmate Antonio Smith to plant a weapon in Ellison's room. (*Id.* ¶¶ 21–22.) Smith allegedly placed a weapon in Ellison's room on January 19, 2005. (*Id.* ¶ 22.) Ellison found the weapon approximately five minutes before Riel, Guarino, and other officers searched Ellison's room. (*Id.*) After Ellison's room was searched, Riel allegedly told plaintiff, "[Y]ou're next Islam." (*Id.*) On January 30, 2005, plaintiff sent a letter to the Dutchess County District Attorney's Office to inform them of this alleged conspiracy. (*Id.* ¶ 21.) Although plaintiff states that Guarino, Riel, and the unidentified sergeant intended similarly to frame him at some future time (*id.* ¶ 22), he does not allege that any such event ultimately took place.

Plaintiff sent additional letters to Mazzuca on February 2, 2005, lodging complaints on behalf of himself and his fellow inmates. (*Id.* ¶ 23). Plaintiff also filed a grievance on February 24, 2005 that concerned "aforementioned violations"—presumably Ellison's alleged framing— and complained that Schaller had failed to investigate "approximately a dozen complaints [that plaintiff] filed two months earlier." [5] (*Id.* ¶ 25.)

On March 21, 2005, Riel personally delivered plaintiff's "legal mail" to his cell. (*Id.* ¶ 27.) The correspondence in question allegedly concerned an ongoing investigation against Riel, and was sent by the New York State Police, postmarked March 17, 2005, and stamped

---

[5] The complaint does not specify what conduct the "dozen complaints" complained of. (Compl. ¶ 25.)

"OFFICIAL BUSINESS." (*Id.*) Officer Riel indicated to plaintiff "that he was familiar with the contents of the correspondence." (*Id.*) In response, plaintiff filed a grievance on March 23, 2005 against Riel for "harassment, mail tampering, and spreading rumors about Plaintiff to other inmates and corrections officers, jeopardizing Plaintiff's safety." (*Id.*)

On or about April 1, 2005, a hearing was conducted to investigate plaintiff's grievances about the November 2004 poster incident and March 2005 mail tampering. (*Id.* ¶ 28). The investigation, conducted by defendant Captain Schaller, established that: (1) Officer Bean (working the 6:30 a.m. to 2:30 p.m. shift) and Officer Antunovic (working the 10:30 p.m. to 6:30 a.m. shift) observed the poster with the language "Kill Zone" and "Kneel Before Us"; (2) Officer Riel (working the intervening 2:30 p.m. to 10:30 p.m. shift) denied any knowledge of the poster,; (3) Officer Bean removed the poster; (4) the poster was an advertisement for a PlayStation video game taken from an ESPN magazine; and (5) Captain Schaller found that the treatment of plaintiff's letter from the New York State Police was the result of oversight. (Compl. ¶¶ 28–29, 31.) Plaintiff's grievances about the poster incident and mail tampering were denied. (Compl. ¶ 32.)

Plaintiff appealed the findings of the April 1, 2005 hearing to the Central Office Review Committee (CORC) on or about April 6, 2005. (Compl. ¶ 32.) On April 27, 2005, plaintiff received CORC's response. (Compl. ¶ 33.) Plaintiff found CORC's response "fell well short of the resolution requested." (*Id.*)

## STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), the court is required to read a complaint generously, accepting all the alleged facts as true and drawing all reasonable inferences in favor of the plaintiff. *See LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991);

*Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).  The court must deny the motion unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).  Additionally, "the review of such a motion is limited, and '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996) (citations omitted).  Moreover, pro se complaints must be liberally construed and courts must apply a "less stringent standard[ ] than when a plaintiff is represented by counsel."  *Branham v. Meachum*, 77 F.3d 626, 628–29 (2d Cir. 1996) (internal quotes and citation omitted).

     Defendants have submitted material outside the pleadings to support their argument that plaintiff has not exhausted administrative remedies regarding the claim of confiscation of family mail.  (Alderstein Decl. Ex. B.)  Federal Rule of Civil Procedure 12(b) mandates that if "matters outside the pleadings are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment."  Fed. R. Civ. P. 12(b).  Converting defendants' motion to dismiss into one for summary judgment requires a court to provide notice to the parties prior to conversion.  *See* Fed. R. Civ. P. 12(b).  Defendants have served on plaintiff a Notice to Pro Se Litigant Opposing Summary Judgment, as required by Local Civil Rules 12.1 and 56.2.  However, because the Court dismisses plaintiff's claim regarding family mail for failure to state a claim for which relief may be granted under Rule 12(b)(6), *see discussion infra*, the exhaustion inquiry is unnecessary, and the Court declines to convert any part of this motion to one for summary judgment and excludes all matters outside the pleadings presented by both parties.

## DISCUSSION

**1. Eighth Amendment Claim**

Plaintiff claims that Riel's alleged posting of the video game advertisement that stated "Kill Zone" and "Kneel Before Us" constituted harassment and "psychological warfare." (Compl. ¶ 12.) Construed liberally, these allegations may be interpreted as a claim that the advertisement violated the Eighth Amendment's prohibition on cruel and unusual punishment.

Although inappropriate and unprofessional, the display of the poster (apparently for approximately twenty-four hours) did not rise to the level of a constitutional violation. A violation of a prisoner's federal rights under § 1983 requires an injury that involves more than mental or emotional pain. *See* 42 U.S.C. § 1997e(e) (providing that "[n]o Federal civil action may be brought by a prisoner confined in a…correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"). "[V]erbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998); *see Brown v. Croce*, 967 F. Supp. 101, 104 (S.D.N.Y. 1997) (holding that as a matter of law, a corrections officer's calling plaintiff a racial epithet and slapping him did not constitute a violation of the Eighth Amendment).

Furthermore, it is established that "[i]n order to establish a violation of his Eighth Amendment rights, an inmate must show (1) a deprivation that 'is objectively, sufficiently serious' that he was denied 'the minimal civilized measure of life's necessities,' and (2) a 'sufficiently culpable state of mind' on the part of the defendant official, such as deliberate

7

indifference to inmate health or safety." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Since the poster constituted a form of verbal harassment unaccompanied by physical injury, and did not deny plaintiff the necessities of life, plaintiff does not have a constitutional claim under the Eighth Amendment. Defendants' motion to dismiss this claim is therefore granted.

### 2. Retaliation

Plaintiff alleges claims against Blaine, Riel, and Guarino for retaliation. It is well established that prison officials may not retaliate against inmates for exercising their constitutional rights. *See, e.g.*, *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002); *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir.1988). To sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchack*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). Courts "must approach prisoner claims of retaliation with skepticism and particular care" because such claims are easily fabricated and may cause unwarranted judicial interference with prison administration. *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *see also Gill*, 389 F.3d at 385.

#### a. *Claim of Retaliation against Blaine*

Plaintiff alleges that Blaine retaliated against him for filing the November 21, 2004 grievance against Riel for displaying the "Kill Zone" poster by threatening to place him in

involuntary protective custody and improperly conducting the investigation of plaintiff's complaint. (Compl. ¶ 14.)

It is undisputed that plaintiff has satisfied the first prong of the retaliation cause of action because the filing of prison grievances is a constitutionally protected activity. *See Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988); *Bartley v. Collins*, 95 Civ. 10161 (RJH), 2006 WL 1289256, at *4 (S.D.N.Y. May 10, 2006).

However, plaintiff's allegations regarding Blaine's threat and inadequate investigation of plaintiff's complaint fail to meet the adverse action requirement. For the purposes of retaliation, an adverse action is defined as one "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Gill*, 389 F.3d at 380 (citing *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). The test is an objective one that applies even if the plaintiff in question was not himself subjectively deterred. *Id.* (citing *Davis*, 320 F.3d at 353–54). "This objective inquiry is 'not static across contexts,' but rather must be 'tailored to the different circumstances in which retaliation claims arise.'" *Davis*, 239 F.3d at 493 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (en banc) (per curiam)). Moreover, in considering what constitutes adverse action, a court should be mindful that "'[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse.'" *Id.* (quoting same) (bracketed language in original). If the action would not deter an individual of ordinary firmness the retaliatory act "is simply de minimis and therefore outside the ambit of constitutional protection." *Davis*, 320 F.3d at 353.

The threat to place plaintiff in protective custody is de minimis and does not constitute an adverse action. "Threats made to an inmate, without more, do not rise to the level of a

9

constitutional violation." *Pledger v. Hudson*, No. 99 Civ. 2167, 2005 WL 736228, at *5 (S.D.N.Y. Mar. 31, 2005); *see also Bartley*, 2006 WL 1289256, at *6 ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action." (citing *Dawes*, 239 F.3d at 493 ("Not every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment"); *Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) ("[Defendant's] alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] do not give rise to a First Amendment retaliation claim."); *Williams v. Muller*, No. 98 Civ. 5204, 2001 WL 936297, at *4 (S.D.N.Y. Aug. 17, 2001) (defendant's "alleged spreading of rumors [that] plaintiff claims . . . were intended to incite the inmates to harm plaintiff . . . do not give rise to a retaliation claim"); *Cruz v. Hillman*, No. 01 Civ. 4169, 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002) (allegation that corrections counselor expressed his dislike for inmates who file civil lawsuits, and later came to plaintiff's cell and said "Green Haven is an open battlefield, so be careful" insufficient to state a retaliation claim) (parenthetical language in original)). Plaintiff's retaliation claim with respect to Blaine's threat, therefore, must be dismissed.

Blaine's alleged improper investigation of plaintiff's complaint against Riel (e.g., by failing to summon most of his witnesses, treating the two witnesses summoned in an unprofessional manner, and distorting and omitting material facts) similarly fails to satisfy the adverse action standard. This type of alleged conduct is not, in the Court's view, likely to "chill a person of ordinary firmness from continuing to engage" in the protected activity at issue here— the filing of grievances. While plaintiff does not have to plead a separate cognizable constitutional injury to establish an adverse action, it is worth noting that "inmate grievance

programs created by state law are not required by the Constitution," and "[i]f prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim." *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005). Because a prisoner would likely still choose to resort to the prison grievance procedures in order to exhaust his claims prior to seeking relief in federal court, irrespective of how seriously or professionally those grievances are treated, a lack of professionalism and failure to obtain relief at the first stage of the grievance process is unlikely to prevent a person of ordinary firmness from persisting in filing grievances. Furthermore, the conduct alleged here is qualitatively different in kind from the types of harms that courts in this circuit have typically considered significant enough to constitute "adverse actions." *See, e. g.*, *Morales v. Mackalm*, 278 F.3d 126, 131–32 (2d Cir. 2002) (transfer to a psychiatric facility); *Graham v. Henderson*, 89 F.3d 75, 80–81 (2d Cir. 1996) (false misbehavior reports against plaintiff); *Colon v. Coughlin*, 58 F.3d 865, 872–73 (2d Cir. 1995) (planted-contraband in plaintiff's cell); *Jones v. Coughlin*, 45 F.3d 677, 680 (2d Cir. 1995) (false misbehavior report resulting in 120 days of punitive segregation); *Gill v. Hoadley*, 261 F. Supp. 2d 113, 124 (N.D.N.Y. 2003) (false misbehavior reports resulting in keeplock confinement for almost fifty days); *Van Pelt v. Finn*, 92 Civ. 2977, 1993 WL 465297, at *4–*5 (S.D.N.Y. Nov. 12, 1993) (reassignment to less desirable job with lower pay). Plaintiff's claim that Blaine retaliated against him for filing grievances by improperly investigating those grievances therefore fails to state a claim for which relief may be granted. Furthermore, to the extent plaintiff purports to allege a claim of retaliation against Schaller for failure to adequately investigate complaints (*see* Compl. ¶¶ 25, 28–32), any such claim must be dismissed for the same reasons.

### b. *Claim of Retaliation against Riel and Guarino*

Plaintiff alleges that Riel, Guarino, and an unidentified sergeant allegedly conspired to frame Officer Bean, inmate Anthony Ellison, and him, in retaliation for complaints filed about conditions in the housing unit.  (Compl. ¶ 21.)  Plaintiff states that Riel, Guarino, and the unidentified person conspired to frame Bean and Ellison by recruiting inmate Antonio Smith to plant a weapon in Ellison's room.  (*Id.* ¶¶ 21–22.)  After Ellison's room was searched, Riel allegedly told plaintiff, "[Y]ou're next Islam."  (*Id.* ¶ 22.)  It is unclear from plaintiff's allegations, though ultimately unimportant, how the alleged set-up may have harmed Bean.  Plaintiff states that Guarino, Riel, and the unidentified sergeant intended similarly to frame him at some future time (*id.* ¶ 22), but he does not allege that any such event ultimately took place.

Plaintiff does not have standing to bring a claim of retaliation arising out of the alleged set-up on behalf of Bean and Ellison.  "In every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 11 (2004).  "The Article III limitations [of standing jurisprudence] are familiar:  The plaintiff must show that the conduct of which he complains has caused him to suffer an "injury in fact" that a favorable judgment will redress." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Since plaintiff does not demonstrate that Riel and Guarino's alleged conspiracy and effort to frame Bean and Ellison caused him to suffer an injury in fact, he does not have standing to bring this claim.

To the extent plaintiff is alleging that Riel retaliated against him for filing grievances by threatening to frame him at some future time—"[Y]ou're next Islam"—as discussed in greater detail above, a mere threat without more will not satisfy the adverse action requirement of a First Amendment retaliation claim. *See Pledger*, 2005 WL 736228, at *5.

12

Plaintiff also suggests that Riel's alleged tampering with his family and legal mail was retaliatory. However, this is not the type of conduct that would deter an ordinary individual from exercising his constitutional rights. Plaintiff does not allege that he suffered any injury as a result of the alleged tampering, and therefore these isolated instances of mail tampering are not "adverse actions" supporting a cause of action for First Amendment retaliation. *See Battice v. Phillip*, 04 Civ. 0669 (FB), 2006 WL 2190565, at *6 (E.D.N.Y. Aug. 2, 2006) ("Even if intentional, [defendant's failure to deliver plaintiff's mail] is 'simply de minimis and therefore outside the ambit of constitutional protection.'"); *Rivera v. Pataki*, 04 Civ. 1286 (MBM), 2005 WL 407710, at *19 (S.D.N.Y. Feb. 7, 2005) (dismissing prisoner's claim that correction officers actively prevented him from sending legal mail in retaliation for a pending lawsuit because the alleged conduct did not constitute "adverse action").

### 3.  Mail Tampering Claim

Plaintiff's claim that Riel tampered with his family correspondence and opened his legal mail outside his presence potentially alleges an actionable constitutional violation apart from his claim of retaliation.

"Interference with legal mail implicates a prison inmates rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the Constitution. To state a claim for denial to access to the courts—in this case due to interference with legal mail— a plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's to pursue a legal claim." *Davis*, 320 F.3d at 351 (internal quotation marks, citations, and brackets omitted). Furthermore, while a prisoner has a right to be present when his legal mail is opened, *Wolff*, 418 U.S. at 574–76, "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation, *Davis*, 320 F.3d at 351 (citations omitted).

"Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" *Id.* (citations omitted). Two incidents of legal mail tampering might establish a constitutional violation if (1) the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received. *Id.* (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir.1986)). Where the incidents of tampering are few, district courts require specific allegations of invidious intent or of actual harm. *See Cancel*, 2001 WL 303713, at *6 (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996) for the proposition that "in order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.").

In this case, plaintiff alleges only one instance in which his legal mail was tampered with, and one instance in which his family correspondence disappeared. There is a question whether the correspondence from the State Police is in fact "legal" mail because it did not involve attorney-client communications or litigation documents, *see Wolff*, 418 U.S. at 576; *Standley v. Lyder*, 2001 WL225035, at *2 (S.D.N.Y. Mar. 7, 2001), but assuming arguendo that the letter sent to plaintiff by the New York State Police is legal mail, plaintiff still fails to state a cognizable cause of action for interference with legal mail. Plaintiff does not allege that Riel's opening of the letter from the New York State Police in any way hindered him from pursuing a legal claim. Furthermore, taken together, and liberally construed, these alleged instances of interference with plaintiff's mail[6] do not demonstrate a continuing practice or pattern of

---

[6] It is worth noting here that plaintiff does, for the first time in his opposition to the pending motion, allege an additional instance of legal mail tampering, which the Court has declined to consider. *See supra*

14

interference or an actual legal injury. Nor does plaintiff make specific allegations of invidious intent or of actual harm. Therefore plaintiff's claim of mail tampering is dismissed for failure to state a cognizable constitutional injury.

## CONCLUSION

For the foregoing reasons, defendants' 12(b)(6) motion is hereby GRANTED. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
September 29, 2006

Richard J. Holwell
United States District Judge

---

note 2. However, even if the Court treated this additional allegation as a motion to amend the complaint, it would have been denied as futile. In the Second Circuit, a party is generally afforded leave to amend a pleading under Rule 15(a) "unless the movant has acted in bad faith, the amendment will prejudice the nonmovant, or the amendment is futile." *Neshewat v. Salem*, 365 F. Supp.2d 508, 515 (S.D.N.Y. 2005) (citing *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987); *Posadas de Mexico, S.A. de C.V. v. Dukes*, 757 F.Supp. 297, 300) (S.D.N.Y. 1991)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). In reviewing futility under a 12(b)(6) standard, "Second Circuit caselaw makes clear . . . that a district court addressing the futility of proposed amendments to a complaint should consider whether the amendments are sufficient on the merits." *Fezzani v. Bear, Stearns & Co.*, No. 99 Civ. 0793, 2005 WL 500377, *3 (S.D.N.Y. Mar. 2, 2005) (citations omitted). An amendment to a pleading is futile if it could not withstand a motion to dismiss under Rule 12(b)(6). *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). In this case, the amendment of the complaint to include this additional instance of mail tampering would not alter the insufficiency of the allegations to support a constitutional claim for mail tampering, because plaintiff cannot show that the tampering in any way prevented him from pursuing his legal claims or otherwise harmed him. Nor, taken together, would the three alleged instances of tampering suggest an ongoing practice of censorship. *See Davis*, 320 F.3d at 351 (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir.1986)).